**In re MARRIAGE OF Clarice Marie DETHROW and John F. Dethrow.**

**Upon the Petition of Clarice Marie Dethrow, Petitioner-Appellant,**

**And Concerning John F. Dethrow, Respondent-Appellee.**

No. 83–1452.

Court of Appeals of Iowa.

Sept. 6, 1984.

Stephen M. Sharp of Rooks, Pitts, Fullagar & Proust, Chicago, Ill., and C.A. Pasley of Pasley, Singer, Pasley, Holm, Timmons & Mathison, Ames, Iowa, for petitioner-appellant.

Stephen M. Terrill of Mauer & Terrill, Ames, Iowa, for respondent-appellee.

Heard by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

SCHLEGEL, Judge.

Petitioner, Clarice Dethrow (now known as Clarice Sharp), appeals from the denial of her application for modification of the custody provisions of the decree dissolving the parties' marriage. Clarice asserts that there has been a substantial change of circumstances since the decree which warrants modifying the decree by awarding her sole custody of the parties' child, Amber, or at the least setting up a joint custody arrangement with her having physical care of the child. We affirm in part and modify in part.

**I.** *Scope of Review.* Our review is de novo. *Melton v. Melton,* 256 N.W.2d 200, 205 (Iowa 1977). We will give weight to the fact findings by the trial court, but are not bound by those findings. Iowa R.App.P. 14(f)(7). Two different, though related, standards are used when determining which parent receives custody. The general principles of deciding which parent *initially* receives custody of a child were set out in *In re Marriage of Bowen* as follows:

> The status of children should be quickly fixed and, thereafter, little disturbed.... No hard and fast rule governs which parent should have custody. It is not a matter of reward or punishment. The issue is ultimately decided by determining under the whole record which parent could minister more effectively to the long-range best interest of the children.

219 N.W.2d 683, 687–88 (Iowa 1974) (citations omitted).

In considering a *modification* of the initial award of custody, the court looks for a material and substantial change in circumstances. *See Dworak v. Dworak,* 195 N.W.2d 740, 742 (Iowa 1972). To show such changes in circumstances,

> [t]he parent seeking to take actual custody from the other has the burden to show some superior claim based on his ability to minister, not equally, but more effectively to the children's well being. This principle is but a corollary to our rule that custody of children, once fixed, should seldom be disturbed and then only for the most cogent reasons.

*In re Marriage of Gutermuth,* 246 N.W.2d 272, 274 (Iowa 1976) (citations omitted).

Clarice asserts that we should apply the standard used for making the initial custody determination in this action for modification because the trial court considered an impermissible factor in rendering the initial grant of custody. We believe Clarice has misinterpreted the record.

Clarice relies on the following statement from the trial court's Ruling on Application to Modify Decree:

> This has been a most stressful case to hear initially and to reconsider. In the normal course of events, [Clarice] would have custody of Amber. She has good parenting skills.
>
> *       *       *       *       *       *
>
> ... Unfortunately, she was placed in a position where she virtually had to forego goals of personal self-growth or custody of Amber.

Clarice believes this statement is an admission that the trial court penalized her for pursuing her education. The whole record, however, shows this belief is unfounded. The initial decree granting custody to John

Dethrow reveals the trial court was very approving of and sympathetic to Clarice's effort to pursue her education. Nowhere in that decree, or in the ruling being appealed here, is there any indication the trial court based its decision on the traditional, stereotypical assumptions related to the sex of the parent that resulted in reversal in *In re Marriage of Tresnak*, 297 N.W.2d 109 (Iowa 1980). The statement cited by Clarice refers to the total circumstances surrounding the breakup of Clarice's marriage, including the hostility and lack of support of her own family. Because the trial court did not consider impermissible factors or penalize Clarice in the initial decree, Clarice must show a substantial change in circumstances.

■ II. *The Merits of the Custody Decision.* We affirm the trial court's decision in this application for custody modification because Clarice has shown no cogent reason to have the initial decree modified to grant her sole custody. The trial court found, and we agree, that Amber is happy, well-adjusted, and maturing properly. Clarice's remarriage has undoubtedly improved her parenting ability. However, remarriage alone does not constitute a material and substantial change in circumstances justifying a change in custody, *see In re Marriage of Powers*, 226 N.W.2d 810, 812 (Iowa 1975), especially when the trial court considers—as did the trial court in this case—the possibility of remarriage in making the initial decree. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983) ("The changed circumstances must not have been contemplated by the court when the decree was entered …"). Because Clarice has not shown that she can minister more effectively to Amber's well being, the initial decree cannot be modified to grant her sole custody of Amber.

■ III. *Joint Custody.* Clarice asks alternatively that she and John Dethrow be awarded joint custody of Amber. We grant her request. Since the time of trial the legislature has amended section 598.41 of the Iowa Code by adding a new subsection. The amendment states:

Sec. 6. The *enactment* of subsection 1 of section 598.41 *constitutes a substantial change in circumstances* authorizing a court to modify a child custody order pursuant to section 598.21 and chapter 598A.

Iowa Code § 598.41(6); 1984 Legis.Serv. No. 3 at 44 (West) (emphasis added). Iowa Code section 598.41 was enacted and went into effect in 1982, after the initial custody decree was rendered in 1981, and before the modification decree was rendered in 1983. We therefore conclude that there was a substantial change in circumstances which could justify modifying the initial decree.

■ The legislature has also amended section 598.41(2). This amended section now requires that any refusal to award joint custody be justified by "cite[d] clear and convincing evidence, pursuant to the factors in subsection 3, that joint custody is unreasonable and not in the best interest of the child to the extent that the legal custodial relationship between the child and parent should be severed." 1984 Legis.Serv. No. 3 at 43 (West).

The trial court's justification for not awarding joint custody does not meet the new "clear and convincing" standard. The only factor listed was an inability of the parties to work harmoniously. We have examined the record as a whole and find that the parties actually have worked together harmoniously in most instances. They can communicate well regarding Amber's needs, and each can support the other's relationship with Amber.

Our review of the record, examining the factors listed in section 598.41(3), convinces us that this is an appropriate case for awarding joint custody. However, for the reasons stated in division II of this opinion, physical care of Amber will remain with John.

■ IV. *Costs.* The trial court charged costs and the fees of Amber's attorney, William Pattinson, to Clarice. Clarice requests that we charge those amounts to John. Her request is without merit.

The trial court properly charged the costs to Clarice. Iowa Code § 625.1 (1983). Hence, the fees for Amber's attorney were also properly charged to Clarice. Iowa Code § 598.12(3) (1983).

AFFIRMED IN PART AND MODIFIED IN PART.