**IN THE COURT OF APPEALS OF IOWA**

No. 17-1947
Filed November 7, 2018

**MIGUEL ANTONIO HERNANDEZ,**
      Plaintiff-Appellee,

**vs.**

**DEENA JO MILLS,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,
Judge.


A mother challenges the physical care provisions of a decree establishing
paternity, custody, visitation, and support. **AFFIRMED.**


Jacob van Cleaf of Van Cleaf & McCormack Law Firm, LLP, Des Moines,
for appellant.

R.J. Hudson II of R.J. Hudson Law Firm, P.C., West Des Moines, for
appellee.


Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**McDONALD, Judge.**

Miguel Hernandez and Deena Mills are the parents of four children. Hernandez filed a petition to establish paternity over the children pursuant to Iowa Code chapter 600B (2016). The parties stipulated Miguel was the father of the children, and they tried the issues of custody, visitation, and child support to the district court. The district court established paternity of the children in Hernandez, awarded the parties joint legal custody of the children, awarded Hernandez physical care of the children, and granted Mills liberal visitation. Mills timely filed this appeal. In this appeal, Mills challenges the district court's physical care determination.

Our review of equitable proceedings is de novo. *See* Iowa R. App. P. 6.907; *Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001). We review the entire record and decide anew the factual and legal issues preserved and presented for review. *See In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). "Although our review is de novo, we afford deference to the district court for institutional and pragmatic reasons." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). In exercising our review, "[p]rior cases are of little precedential value, except to provide a framework for analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995) (citing *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992)).

This is an action to establish paternity, custody, and care of minor children between unmarried persons filed pursuant to Iowa Code chapter 600B. The analysis of who should have physical care of the children is the same whether the

parents are married or unmarried.  *See* Iowa Code § 600B.40(2) (providing the statutory criteria set forth in section 598.41, for dissolutions of marriage, shall apply the chapter 600B proceedings).  In making the physical care determination, we look to the factors set forth in Iowa Code section 598.41(3) and enumerated in our case law.  *See In re Marriage of Hansen*, 733 N.W.2d 683, 696-700 (Iowa 2007); *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974).  "Each factor, however, does not necessarily impact the decision with equal force."  *In re Marriage of Daniels*, 568 N.W.2d 51, 54 (Iowa Ct. App. 1997).  In considering these factors, our "ultimate objective is to place the children in the environment most likely to bring them to healthy mental, physical, and social maturity."  *McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010) (altered for readability).  "The controlling consideration is the best interests of the children."  *Stieneke v. Sargent*, No. 15-1643, 2016 WL 2745058, at *1 (Iowa Ct. App. May 11, 2016) (citation omitted).  The best interest of the children includes, but is not limited to, "the opportunity for the maximum continuing physical and emotional contact with both parents . . . unless direct physical harm or significant emotional harm to the child[ren]" may result from this contact.  Iowa Code § 598.41(1)(a); *accord In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996).  "[G]ender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain [physical care] in an original custody proceeding."  *In re Marriage of Decker*, 666 N.W.2d 175, 177 (Iowa Ct. App. 2003).

Mills first raises a procedural challenge to the decree.  She contends the issues of custody, visitation, and support were not properly before the district court because Hernandez's petition only sought a declaration of paternity without

requesting any other form of relief. Mills is correct that the petition only sought a declaration of paternity, but her challenge does not entitle her to relief. Mills failed to raise this challenge in the district court. Error was not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Even if error had been preserved, the challenge is without merit. Mills had fair notice these issues were set for trial. The district court's scheduling order identified custody, visitation, and support as the issues for trial. In the parties' mediation agreement, the parties stipulated to paternity and agreed the only issues for trial were custody, visitation, and support. The matter came on for trial without objection. Mills does not identify any prejudice, and we find none.

On the merits, on de novo review, we agree with the district court's determination of custody, visitation, and support. Rather than reciting all of the facts and circumstances of the case, we choose to discuss items of particular importance in support of our conclusion.

First, Hernandez can more consistently minister to the needs of the children. *See Winter*, 223 N.W.2d at 168 (concluding determining which parent can best minister to the needs of the children is the determinative factor). The parties met and began dating while still in high school. While still in high school, Mills became pregnant. Hernandez dropped out of school and obtained full-time employment to support Mills and the child. Mills had the child, remained in school, and graduated. After graduation, the parties lived together for a period of six years and had three additional children together. Mills moved out of the parties' residence in 2013.

After she moved out, Hernandez continued to work full time to provide for the children. He exercised shared care of the children with Mills for periods of time. On multiple occasions, as will be discussed below, Hernandez had exclusive care of the children. In short, over the course of the children's lives, Hernandez has been a consistent and reliable caretaker.

In contrast, since leaving the family residence, Mills has had unstable housing, which resulted in her providing inconsistent and unsuitable care for the children. *See, e.g.*, *In re Marriage of McKimmy*, No. 16-0872, 2017 WL 510961, at *1 (Iowa Ct. App. Feb. 8, 2017) (recognizing unstable housing as a consideration against awarding physical care). Mills was evicted from multiple apartments. She lived on and off with different boyfriends and relatives for periods of time. More recently, Mills and her boyfriend moved into a recreational vehicle and decided to live in various campgrounds in Atlantic, Iowa. This housing was not suitable for four children. On several occasions when Mills' housing was not secure, Hernandez exercised exclusive care of the children for several months at a time. Mills' inability to obtain stable housing militates against granting her physical care of the children.

Mills' decision to move into a recreational vehicle and live in Atlantic counsels against awarding her physical care for an additional reason. The children were raised in Des Moines. Hernandez and his extended family reside in Des Moines. When Mills moved to Atlantic, which is more than one hour away from Des Moines, she took the children with her without any notice to Hernandez. A parent's decision to relocate the children without first consulting the other parent reflects negatively on the moving parent. *See In re Marriage of Jacobson*, No. 17-

1040, 2018 WL 1633512, at *1 (Iowa Ct. App. Apr. 4, 2018) (stating a unilateral move counsels against an award of physical care); *Carmichael v. Philpott*, No. 17-0124, 2018 WL 739275, at *3 (Iowa Ct. App. Feb. 7, 2018) ("Stacy's decision not to tell Clinton that she and the child—along with the rest of her family—were moving residences is not supportive of the child and Clinton's relationship.").

As of late, Mills has actively interfered with Hernandez's relationship with the children. Iowa Code section 598.41(1)(c) requires this court to consider whether one parent will deny the other the opportunity for maximum contact with the child without cause. Here, after Mills made the unilateral decision to move the children to Atlantic, she refused to answer Hernandez's communications and deprived him of any contact with the children for almost five weeks. During the course of this proceeding, Mills reported to the police that Hernandez sexually abused the children. The police investigated the matter, and no charges were filed. The department of human services investigated the matter and found the report to be not confirmed. There was no credible evidence of abuse presented to the district court. Nonetheless, Mills has not allowed Hernandez to have any contact with the children since the time she filed the abuse report through the time of trial. Preventing communication with the children and lobbing false accusations of sexual abuse militates against Mills' physical care of the children. *See In re Marriage of Grabill*, 414 N.W.2d 852, 853 (Iowa Ct. App. 1987) (discussing mother withholding contact with children as a significant fact); *Jacobson*, 2018 WL 1633512, at *2 (stating false allegations of abuse militate in favor of awarding the other parent physical care of the child); *In re Marriage of Winnike*, 497 N.W.2d 170, 174 (Iowa Ct. App. 1992) (discussing significance of false sex abuse allegations

made by mother); *cf. In re Marriage of Rosenfeld*, 524 N.W.2d 212, 214-15 (Iowa Ct. App. 1994) (noting false allegations of abuse as relevant in establishing a change in circumstances).

In contrast, Hernandez has been more supportive of fostering Mills' relationship with the children. "[A] parent's willingness to encourage contact with the noncustodial parent is a critical factor in determining custody." *Bailey v. Rinard*, No. 17-1055, 2017 WL 6026469, at *3 (Iowa Ct. App. Nov. 22, 2017) (quoting *In re Marriage of Holst*, No. 02-0381, 2002 WL 31641452, at *2 (Iowa Ct. App. Nov. 25, 2002)); *see also In re Marriage of Gartner*, No. 15-1370, 2016 WL 3002778, at *6 (Iowa Ct. App. May 25, 2016); *In re Marriage of Shanklin*, 484 N.W.2d 618, 619 (Iowa Ct. App. 1992). Hernandez credibly testified he did not file this paternity action sooner because he hoped the parties would be able to communicate and co-parent effectively. He only took legal action when Mills' conduct started to deteriorate. Hernandez testified he was willing to foster Mills' relationship with the children going forward even though she falsely accused him of sexual abuse. He testified it was important for the children to have a relationship with their mother regardless. Hernandez's willingness to continue to support the children's relationships with their mother supports the district court's decision to award him physical care of the children. *See Jacobson*, 2018 WL 1633512, at *4 (citing father's support of child's relationship with mother weighed in favor of awarding father physical care of the child).

In conclusion, Mills' pattern of unstable behavior is detrimental to the children's physical, mental, emotional, and social development. The children have a stable home life and family support with Hernandez. The record reflects

Hernandez is best situated to minister to the children's physical, mental, emotional, and social development. The record also reflects Hernandez is willing and able to ensure the children have a meaningful relationship with their mother. We affirm the decree in all respects.

**AFFIRMED.**