In re the MARRIAGE OF William L. CUPPLES and Kelly L. Cupples.

Upon the Petition of William L. Cupples, Petitioner–Appellee/Cross–Appellant,

And Concerning Kelly L. Cupples, Respondent–Appellant/Cross–Appellee.

No. 94–1030.

Court of Appeals of Iowa.

March 30, 1995.

Jeffrey A. Smith of Heslinga, Heslinga & Dixon, Oskaloosa, for appellant.

Robert A. Wright, Jr., of Wright & Wright, Des Moines, for appellee.

Considered by DONIELSON, C.J., and HAYDEN and HABHAB, JJ.

DONIELSON, Chief Judge.

Kelly Cupples appeals the district court's decision to award William Cupples the physical care of the parties' three children. She argues the court placed undue emphasis on her sexual orientation. She also argues William was not a suitable caretaker for the children, and their best interests would be served if they were placed in her physical care. William cross-appeals and contends the district court should not have awarded Kelly a $2,000 lien against the family homestead as part of the property division. We affirm on the custody issue and modify the decree to eliminate the lien.

## I. CUSTODY.

■ In child custody cases the best interest of the children is the first and governing consideration. *In re Marriage of Rodgers,* 470 N.W.2d 43, 44 (Iowa App.1991). We look to determine which parent will in the future provide an environment where the children are most likely to thrive. *In re Marriage of Engler,* 503 N.W.2d 623, 625 (Iowa App.1993). Our review is de novo. Iowa R.App.P. 4. In reviewing a district court's award of custody, we are not bound by its findings but give them deference because the district court had an opportunity to view the demeanor of the parties and evalu-ate them as custodians. *See Engler,* 503 N.W.2d at 625.

■ We have reviewed the record and find no support for Kelly's contention that the district court placed undue emphasis on her sexual orientation in reaching its decision to award the children's physical care to William. While William appears to have taken every opportunity at trial to introduce evidence pertaining to Kelly's homosexuality, the district court's ruling makes no reference to the issue. We find no support for Kelly's argument that the district court's lack of reference to the issue is indicative of concealed prejudice toward Kelly. Prior appellate decisions have indicated discreet homosexual parents will not be denied visitation or custody merely because of their sexual orientation. *See, e.g., In re Marriage of Walsh,* 451 N.W.2d 492, 493 (Iowa 1990); *Hodson v. Moore,* 464 N.W.2d 699, 700–01 (Iowa App. 1990).

The district court properly saw Kelly's sexual orientation as a nonissue and focused its decision on the relative parenting abilities of Kelly and William. Likewise, our appellate review will concentrate on the record of each parent's ability to minister to the needs of the children.

■ When Kelly left William she failed to give him a phone number or address where she could be reached. Kelly subsequently returned to the family home and took the children without consulting William or telling him where the children were. During the nine-day period when Kelly kept the children away from their father and home, their son, Dillon, sustained multiple bruises serious enough to warrant a finding of founded physical abuse. The perpetrator of the abuse was unknown, but the abuse occurred while the children were in the care of Kelly or her two roommates.

During the marriage Kelly had a drinking problem. She plead guilty to an OWI charge in the summer of 1993. She admitted at trial she had driven a vehicle even though her license had been suspended. Kelly has also plead guilty to a charge of disorderly conduct. That charge stemmed from an incident

in January 1994, in which she had become angry with William and intentionally used her vehicle to run into his vehicles. The children were in Kelly's vehicle at the time this occurred, and William had to pick up the children following Kelly's arrest.

William admitted his prior use of marijuana. He denied any present use and tested negative on several drug tests during the course of these proceedings. While Kelly appears to have been the children's primary caretaker before she left William, William has assumed those responsibilities since Kelly left and is doing well. The district court appointed a social worker to do a custody evaluation. The social worker recommended William be awarded the care of the children.

We are mindful of the fact the district court had a firsthand opportunity to view the parents and assess their credibility. We believe both parents love their children and could provide for them. However, it appears William is better situated to provide for their best interests. He has financial and career stability, a family support system and a demonstrated ability to care for the children. While Kelly too has a demonstrated ability to care for the children, she also has a history of law-breaking or impulsive conduct which raises serious questions about her maturity. We believe William is a suitable parent who can best meet the needs of the children. We affirm the district court's custody award.

## II. HOMESTEAD LIEN.

William and Kelly purchased a home in 1990 for $28,000. The $4,000 down payment was a gift from William's mother. On their financial affidavits each party estimated the home had a net equity value of $5,000. As part of the property division the district court awarded William the homestead and ordered him to pay the future contract payments and hold Kelly harmless therefor. The court gave Kelly a lien of $2,000 against the homestead. The lien is to draw interest at ten percent until paid.

In his cross-appeal William argues it was inequitable to award Kelly the $2,000 lien. He contends most of the parties' equity in the home was acquired through the gift of the down payment made by his mother. He also points out that Kelly secretly removed a considerable amount of personal property from the family home during the parties' separation. Kelly waived the filing of a reply brief so we do not have the benefit of her response to this issue.

The partners in a marriage are entitled to a just and equitable share of the property acquired through their joint efforts. *In re Marriage of Close,* 478 N.W.2d 852, 856 (Iowa App.1991). The distribution of the property of the parties should be that which is equitable under the circumstances after consideration of the criteria codified in Iowa Code section 598.21(1). *Id.* In determining if one party should be awarded a lien against the family homestead, we consider the overall economic situation of the parties. *See In re Marriage of Richards,* 439 N.W.2d 876, 883 (Iowa App.1989).

William has been awarded the physical care of three very young children. He has good employment but his compensation is not inordinately high and will be easily consumed by the costs of raising the children and maintaining a household. At the time of trial Kelly had no employment and there was little evidence regarding her prospects for providing support for the children.

Nearly all of the equity in the household resulted from a gift from William's mother. We can consider this factor in determining if it was equitable to set aside a lien to Kelly. *See* Iowa Code § 598.21(2) (1995).

Under these circumstances, imposition of the $2,000 lien was inequitable. It is unlikely William would have the means to pay the lien and accruing interest, and the lien was not necessary to offset an unequal or disproportionate property award. We modify the dissolution decree to eliminate the award of a homestead lien to Kelly. In all other respects the dissolution decree is affirmed.

**AFFIRMED AS MODIFIED.**