# IN THE COURT OF APPEALS OF IOWA

No. 19-0612
Filed January 9, 2020

IN RE THE MARRIAGE OF TRISHA ROSE WEIER
AND NICHOLAS JEFFREY WEIER

Upon the Petition of
**TRISHA ROSE WEIER, n/k/a TRISHA ROSE IVERSEN,**
        Petitioner-Appellee,

**And Concerning**
**NICHOLAS JEFFREY WEIER,**
        Respondent-Appellant.

_____

Appeal from the Iowa District Court for Crawford County, Tod J. Deck, Judge.

A father challenges the physical care and visitation provisions of an order modifying his divorce decree. **AFFIRMED.**

Michael J. Riley and Bryan D. Swain of Salvo, Deren, Schenck, Gross, Swain & Argotsinger, P.C., Harlan, for appellant.

Maura Sailer of Reimer, Lohman, Reitz, Sailer & Ullrich, Denison, for appellee.

Considered by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

Nicholas Weier appeals the modification order placing physical care of their two sons with his ex-wife Trisha Iversen. Nicholas contends he would be the superior caregiver and that granting him physical care would "minimize the change in the children's lives." In the alternative, Nicholas asks for additional visitation time. After our independent review of the record and issues raised, we concur in the opinion of the district court that granting Trisha physical care is in the children's best interests. We also decline to alter the visitation schedule.

### I. Facts and Prior Proceedings

Nicholas and Trisha married in 2011 and divorced in 2015. They have two children in common: E.W., born in 2012, and O.W., born in 2013. At the time of the divorce, both parents lived in the Denison area and shared custody of the children. The decree incorporated their stipulation for joint physical care.

In June 2018, Nicholas sought to modify the decree to address Trisha's planned move to Bancroft, which was just shy of 150 miles from Denison. The move related to a career advancement for Trisha's new husband, Trent. But Trisha, a registered nurse, also found a job there with better pay and more flexible hours. Trisha and Trent have a daughter, who was born in 2016. According to Trisha, E.W. and O.W. are protective of their little sister. The district court found Trent had a positive relationship with the boys.

After the divorce, Nicholas stayed in the marital home, which is situated on sixteen acres. His job as a self-employed seed salesman afforded him flexible hours. In Crawford County, Nicholas has extended family who are close to the boys. On the negative side, Nicholas received his second and third convictions for

operating while intoxicated (OWI) since the divorce. The district court also noted the "hurried manner" in which Nicholas decided to cohabitate with new girlfriends.

At the time of the modification hearing, O.W. was in preschool and E.W. was in first grade. E.W.'s teacher noticed that he was showing "a lot of anxieties" and struggled "attention-wise." A psychiatrist diagnosed him with attention deficit disorder and prescribed medication. Trisha believed that the medication helped their son concentrate better, but Nicholas disagreed that E.W. needed the medication. Trisha also took E.W. for counseling sessions. She advised Nicholas of the appointments, but he opted not to attend.

After hearing from both parents, the district court decided Trisha's approach to co-parenting supported an award of physical care to her. The court awarded Nicholas liberal visitation rights. Nicholas now appeals.

## II.    Scope and Standard of Review

Because petitions to modify the physical care provisions of a divorce decree lie in equity, we review the district court's ruling de novo. *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). We reach our own conclusion on issues raised on appeal but give weight to the district court's fact findings. *Id.* In this kind of case, with a close question on physical care, we are especially mindful that the trial judge "had the added advantage of being able personally to watch and listen to the parties." *In re Marriage of Jones*, 309 N.W.2d 457, 462 (Iowa 1981).

## III.    Analysis

## A.    Modification of Physical Care

Iowa courts engage in a two-step analysis when faced with a request to end joint physical care. First, the petitioning parent must show a material and

substantial change in circumstances not contemplated by the court at the time of the decree. *In re Marriage of Mihm*, 842 N.W.2d 378, 382 (Iowa 2014). Second, if the court determines joint physical care is no longer feasible, it must determine which parent is better suited to continue addressing the children's everyday needs. *See Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). The parties do not contest the change in circumstances here. Thus we address only the second step.

The goal of a physical-care determination is to place the children in the environment most likely to bring them to healthy physical, mental, and social maturity. *In re Marriage of Courtade*, 560 N.W.2d 36, 38 (Iowa Ct. App.1996). Given the unique structures of each family, the decision hinges on the particular circumstances affecting the children. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015); *see also In re Marriage of Hansen*, 733 N.W.2d 683, 699 (Iowa 2007).

Sizing up the circumstances here, the district court was clear-eyed about the pros and cons of each physical care option. When considering Trisha as the primary caregiver, the court expressed frustration that she did not give fair notice to Nicholas about her relocation to Bancroft obscuring her intentions and the timeline for the move. The court identified the sole motive for her move as Trent's new employment. The court criticized Trisha for not giving enough thought to the move's impact on the boys. But the court decided Trisha redeemed herself by later scouting out the necessary resources for the children in Bancroft: a quality daycare for O.W. and professional counseling for E.W.

That counseling played a large role in the court's decision-making process. The court was encouraged by Trisha's "involvement and proactive attitude" toward addressing E.W.'s mental health needs. Especially compared to Nicholas's resistance in that area. Overall, the court viewed Trisha as the parent better attuned to the needs of the children and more inclined to facilitate a positive relationship with the other parent. The court did bemoan the children's loss of time with extended family in Crawford County. But the court trusted that Trisha would work to maintain those connections.

The court recognized Nicholas was a capable parent, and we agree. But the court also worried about his stability in light of his alcohol-related legal entanglements. Like the district court, we believe those offenses cast some negative reflections on Nicholas's judgment. We agree with the court's conclusion that Nicholas failed to prove his ability to minister to the needs of the children outpaced Trisha's skill and commitment. *See Hoffman*, 867 N.W.2d at 37. We thus uphold the custody modification.

### B. Visitation

We next turn to Nicholas's alternative request for expanded visitation rights. The modification order awarded visitation every other weekend, as well as weeknight visits every Tuesday and Thursday. The court acknowledged "it might not always be feasible for Nicholas" to exercise the midweek visits, but wanted to make that time available nonetheless. The court also set aside two weeks in each of June, July, and August for the children to have summer visits with Nicholas.

On appeal, Nicholas asks for weekend visitation all but one weekend per month, and three weeks in each summer month. He insists the mandate in Iowa

Code section 598.41(1)(a) (2018) for "maximum continuing physical and emotional contact with both parents" supports adding visitation days.

We reject Nicholas's request to expand visitation. *See In re Marriage of Salmon*, 519 N.W.2d 94, 95 (Iowa Ct. App. 1994) (recognizing "reasonable discretion of the trial court to modify visitation rights" and declining to "disturb its decision unless the record fairly shows it has failed to do equity"). The current schedule maximizes the children's opportunity to enjoy time with both parents— during the school year and when they are on vacation. We see no failure to do equity.

### C.    Appellate Attorney Fees

Trisha seeks appellate attorney fees. In modification proceedings, the district court "may award attorney fees to the prevailing party" in a reasonable amount. Iowa Code § 598.36. That provision also gives us discretion to award appellate attorney fees. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). We consider the parties' respective abilities to pay, whether a party was successful in resisting the modification petition, and whether a party was obliged to defend the district court's decision on appeal. *Id*. After considering these factors, we conclude Trisha should pay her own attorney fees. We do not find Nicholas in a superior financial position to pay for her representation. We divide appellate costs equally between the parties.

**AFFIRMED.**